## H. KING V. HAYDEN KING.

No. 15,690.   (100 Pac. 503.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Injury to Employee—Safety of Appliances—Expert Testimony.* Whether a particular device for operating a circular saw is reasonably safe is a proper subject for expert testimony.

2. ——— *Assumption of Risk.* In an action by an employee to recover for injuries received in operating a defectively ·constructed machine, where it is shown that although he knew what the construction was he did not know of the resulting danger, it is no defense for the employer to show that he was equally ignorant.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed March 6, 1909. Affirmed.

*W. E. Stanley, R. R. Vermilion,* and *Earle W. Evans,* for plaintiff in error.

The opinion of the court was delivered by

MASON, J.: While Hayden King was operating a circular saw, used for trimming the edges of boards in a factory belonging to H. King, his left hand came in contact with it, severing a part of the thumb and three fingers. He brought an action against the owner claiming damages on the ground that the machinery was defective, and recovered a judgment, from which the defendant prosecutes error.

In describing his injury in his petition the plaintiff used the words employed in the foregoing statement. Complaint is made because in his testimony he was not confined strictly to this description, but was permitted to say also that his hand was swollen and sore and that he could not bend his fingers back. The complaint is unfounded, for these matters did not form a separate basis of recovery; they were incidental to the specific injury pleaded.

King v. King.

The petition alleged that the plaintiff's injury resulted from the negligence of the defendant in causing the construction of the bench, or table, in connection with which the saw was operated, without availing himself of advice on the subject, having himself no experience or knowledge in such matters. It also alleged that the resulting machinery was unsafe, but this fact was not in terms charged as negligence. Therefore the defendant maintains that no other form of negligence should have been considered except that exhibited in constructing the machine without advice, whereas the issue tried was whether the machine was in fact unnecessarily dangerous. The interpretation of the pleading proposed is altogether too literal. A part of its allegations might well be treated as surplusage. The defendant could not read it without being made aware that the plaintiff based his action upon a claim that his injury was due to the fact that the machine was improperly constructed, and no possible prejudice resulted from its being somewhat inartistically drawn.

There was evidence that the saw and table were not set up and used in a manner planned by their manufacturer, but according to a method devised by the defendant. The precise mechanism is not entirely clear from the evidence, but a sliding top to the table was one of the features in which the original plan was varied. A witness testified that from his experience with machinery of this sort he knew when it was arranged so that it might be operated with safety, and that this arrangement was not of that character. This evidence was objected to, and the objection is now pressed, on the ground that it presented a conclusion of the witness and invaded the province of the jury. The rule involved is thus stated in volume 12 of the American and English Encyclopædia of Law, at page 440:

"It is usually proper to receive opinions that particular machinery is dangerous. But where the facts

are such that the jury is able to form its own opinion therefrom, evidence regarding the safety of a certain arrangement of machinery is inadmissible."

A mechanical device may of course be so simple that any person of ordinary intelligence can judge of its effect in actual operation as well as a trained machinist. But the contrivance under consideration was clearly not of that nature. It certainly is reasonable to believe—and that was the effect of the testimony—that there are different methods of providing for the feeding of lumber to such a machine, and that some of them may be more dangerous to the operator than others. In *Anderson v. Fielding*, 92 Minn. 42, 99 N. W. 357, 104 Am. St. Rep. 665, the same question was raised with respect to an even less complex contrivance. The plaintiff, a painter, sued his employer for injuries occasioned by a fall. The character of the question presented and the decision of the court appear from these extracts from the opinion:

"The specific charge of negligence alleged in the complaint and relied upon as the basis of his cause of action was that the block or pulley which was a part of the apparatus with which he was supported while at work was so constructed as to be supported by a single stationary hook, without swivel or double hook to prevent the block from unhooking and falling from the line over which it was intended to be placed. . . . Now, the block and hook here in question is, taken by itself, as simple in its construction as a pair of ice tongs, and, if the question was merely whether it could be unhooked, expert evidence would be inadmissible, for anybody would see at a glance that it could be. But the question for the jury was whether it was a reasonably safe appliance for the doing of the particular work assigned to the plaintiff, and whether the single hook in actual use was as safe as the double hook. Whether or not the single hook in such actual use was likely to unhook, the effect upon it of the weight of the operator, or of his swinging himself around so as to paint all parts of the bridge within his reach, at the same time supporting himself wholly or in part by his legs and hand, were not matters of such

common knowledge and experience as to exclude opinion evidence. . . . We hold that it was error for the trial court to exclude the opinion evidence offered by the defendants." (Pages 43, 48.)

In another case the same court said:

"The trial court admitted certain expert evidence as to the comparative safety of operating the saw in question with and without the carriage. This is assigned as error, for the reason that there was nothing complicated about either the machine or its operation. The effect of operating a 'bolting saw' with or without a carriage attachment, as to the safety of the operator, is not a matter of such common knowledge as to preclude the giving of expert testimony on the subject." (*Olmscheid v. Nelson-Tenney Lumber Co.,* 66 Minn. 61, 64, 68 N. W. 605.)

(See, also, 17 Cyc. 232, par. j, notes 60 and 61; cases cited in 3 Wig. Ev. § 1951, note 1.)

In order to demonstrate that a recovery should have been denied on the ground of assumption of risk the defendant asserts that the plaintiff had equal opportunity with himself to know of the danger. This in a sense may be true. The plaintiff knew of the manner in which the saw was operated; but the evidence tends to show that, not being a skilled mechanic, he did not know of the unnecessary danger that resulted from the method adopted. Possibly the defendant was equally ignorant, but the difference is that as an employer he was bound to see that his machinery was reasonably safe, while the plaintiff was chargeable only with notice of such defects as were obvious.

"If the master knows, or is under an obligation to know, of dangers of which the servant is ignorant, and of which he is not under an equal obligation to know, there is no assumption of risk." (26 Cyc. 1203.)

The servant, to be chargeable with knowledge of a defect in the machinery with which he works, must not only know the physical fact in relation thereto, but he must also know and appreciate the danger resulting therefrom. The master, however, who knows the ex-

act condition of the machine, is chargeable with knowledge of any respect in which it is needlessly dangerous, for it is his duty to furnish safe appliances, and his liability can not be diminished by his own ignorance of the proper methods of conducting the business in which he is engaged.

The only other contention that seems to require mention relates to the answers made to special interrogations which were framed to elicit from the jury a statement as to exactly what was wrong with the construction of the machine. To each of these questions the jury made answer that it was impractical. The defendant asked that the court require more specific replies, but this was refused. This refusal is now complained of. The answers were perhaps as definite as the evidence permitted. There was testimony that the machine as constructed by the defendant was impractical. The expert who testified on the subject said that it was unsafe, and gave a part of the reasons why it was dangerous. But he did not give all of them, and was not asked to do so, either on direct or cross-examination. In this state of the record the failure to require a more definite answer was not error.

The judgment is affirmed.