No. 18,641.

ANTONE F. OLSON, a Minor, etc., *Appellee*, v. THE
LINDSBORG MERCANTILE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Unsafe Team of Horses—Assumption of Risk.* In an action based on negligence in furnishing to an employee an unsafe team of horses, proof that the plaintiff, a boy of fifteen, was somewhat afraid of them, and after one runaway had complained to his employer that they were unsafe, and yet continued to drive them for five months, without any promise having been made to remedy the matter, does not conclusively establish the defense of assumed risk.

Appeal from McPherson district court; CHARLES E. BRANINE, judge. Opinion filed February 7, 1914. Affirmed.

*P. J. Galle,* of McPherson, for the appellant.

*R. A. Lovitt,* of Salina, and *G. F. Grattan,* of McPherson, for the appellee.

The opinion of the court was delivered by

MASON, J.: Antone F. Olson sued the Lindsborg Mercantile Company on account of injuries received by him while in its employ in charge of a delivery wagon, by the running away of the team. A general verdict was returned in favor of the plaintiff. A new trial was granted upon the specific ground that one of the special findings was in conflict with others, and with the general verdict. The defendant appeals, and asks that judgment be given in its favor upon the special findings. The plaintiff alleges error against himself in the granting of a new trial, and asks that judgment be rendered on the general verdict.

The defendant maintains that the findings show that it was not negligent, and that a complete defense was established upon the ground of assumed risk. Two bases of negligence were alleged—that the horses were unsafe, and that a bolt in the doubletree was defective. The jury were asked: "Were the horses furnished the plaintiff unsafe for use in the delivery business?" They answered, "No." This, however, is the finding that the trial court regarded as in conflict with others, and on account of which the new trial was granted. In answer to a question whether the defendant was guilty of negligence, and if so, in what it consisted, the jury said: "He was for leaving him continue to handle the unsafe team." This amounts to a finding that the team was unsafe, and therefore nullifies the finding to the contrary. There were also findings to the effect that the president of the defendant company inquired of the former owner of the horses as to their disposition, and was informed that they were gentle and safe. These findings, however, do not establish that the defendant was without actual or constructive knowledge of the character of the horses. The jury were asked, in case they answered in the affirmative the question whether the horses were unsafe to state whether the

defendant had notice or knowledge of the fact. Having answered the former question in the negative no answer to the latter was required, but the jury returned one—also in the negative. This is evidence of some confusion of thought and tends to justify the granting of the new trial. The defendant maintains also that other findings determined that it was not negligent with respect to the bolt. This, if true, would not require a judgment for the defendant, since negligence with regard to the team is not negatived. This matter will be spoken of later in another connection.

The findings that are relied upon as establishing the defense of assumed risk were to this effect: The plaintiff had previously had one accident with the horses, and complained to the president of the defendant that they were unsafe; the president did not hold out a promise to furnish other horses; the plaintiff was afraid of the horses the first time he hitched them up, and after the first runaway, which took place about a month later, he was a little nervous; he drove them five months after this before the accident now under consideration occurred. To the direct question whether the president held out any inducements or promises to the plaintiff to get him to continue driving the horses the jury returned an affirmative answer. Being asked to state what the inducement or promise was they answered: "An inducement to be careful and hold to the lines." We conclude that the defense of assumed risk is not established by these findings. We base this decision, not upon the theory that the danger had been complained of and a promise made to obviate it, but upon the ground that it is not made to appear that the plaintiff knew the full extent of the risk to which he was subjected. He was but fifteen years of age, and although he had driven the team for some six months it can not be said as a matter of law that he must have understood just how dangerous they were. That was a matter of judgment and opinion. Nor does the fact

that he was somewhat timid and nervous about them, and complained to his employer that they were unsafe, conclusively prove that he appreciated the extent of his risk in handling them. The rules laid down with respect to the operation of some very simple mechanical contrivance can not be applied to the handling of a team of horses. The employer was bound to exercise reasonable diligence for the safety of his employee, but the plaintiff was chargeable only with the assumption of such risk as he knew and appreciated. (*King v. King,* 79 Kan. 584, 100 Pac. 503.)

The plaintiff contends that the two findings already set out, one that the team was safe and the other that it was unsafe, may be reconciled upon the theory that the jury must have had reference to different times, and may have meant that the horses were safe until the first runaway, and thereafter were dangerous—that they were safe when originally furnished to the plaintiff, but unsafe at the time of the injury complained of. Interpretation may be resorted to in order to reconcile a seeming conflict in the findings, and it is possible that the jury may have had in mind the thought suggested. But the question asked was plain. It related to the vital point in the case. It was one to which the defendant had a right to require a direct answer. Especially in view of the ruling of the trial court we find ourselves unable to give it a construction that will harmonize with the other findings and the general verdict.

The order granting a new trial is affirmed. The ruling having been based specifically upon the point stated, the trial court may be deemed to have approved the findings except so far as they were in conflict. The findings in relation to the bolt were consistent with diligence on the part of the defendant in that respect. The finding that the negligence of the defendant was in furnishing an unsafe team implied clearly that it was not negligent with respect to the bolt. The conflicting

answers of the jury do not vitiate the other findings, and upon a new trial the defendant should be held to answer only with regard to its alleged negligence in furnishing an unsafe team.